**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**RAEMARIE S.**

**Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**Case No. 3:25-cv-12005**
**Magistrate Judge Cheryl L. Pollak**

# OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Raemarie S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

[1] Frank Bisignano, the Commissioner of Social Security, is substituted as Defendant in his official capacity.

## I. PROCEDURAL HISTORY

On January 8, 2023, Plaintiff filed an application for a period of disability and disability insurance benefits, along with an application for supplemental security income, alleging that she had been disabled since an alleged onset date of October 25, 2022. R. 116-19, 243-68. Plaintiff's applications were denied initially and upon reconsideration. R. 143-48, 151-58. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 159-61. ALJ Daniel Balutis held a telephonic hearing on April 18, 2024, at which Plaintiff, who was represented by counsel, Scott Lawrence Hozakowski Rubi, Esq., testified, as did an impartial vocational expert, Gina Baldwin. R. 43-80.

In a decision dated June 3, 2024, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 25, 2022, the alleged onset date, through the date of the decision. R. 19-42. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on April 25, 2025. R. 5-10. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 12, 2026, Plaintiff consented to disposition of the matter by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, ECF No. 13.[2] The case was reassigned to the undersigned. ECF No. 14. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121

("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation

omitted); *see A.B.*, 166 F. Supp. 3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong [Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B. Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§

404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e)(f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was three months shy of turning 60 years old at the time of the ALJ's decision. R. 100 (reflecting date of birth of August 16, 1964, and noting that Plaintiff was 58 years 2 months old on his alleged onset date of October 25, 2022), 108 (same). The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2028. R. 24. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since October 25, 2022, her alleged onset date. *Id.* The ALJ noted that Plaintiff was hired as a dental assistant on December 2, 2023, earning $1,685 for the remainder of 2023 and then earning a total of $4,639 in 2024 through March 17, 2024. R. 24-25. The ALJ explained that while the earnings for 2023 would exceed the monthly average that is typically indicative of

substantial gainful activity, as would the earnings for the 2.5 months she worked in 2024, the work activity qualified as an "unsuccessful work attempt." R. 25.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: coronary artery disease, cardiac abnormality, bilateral sacroiliac joint dysfunction, lumbar degenerative disc disease and lumbar spondylosis, and sensorineural hearing loss in both ears. *Id*. The ALJ also found that the following medically determinable impairments were not severe: chronic idiopathic constipation, osteoporosis, hypothyroidism, bilateral carpal tunnel, mixed hyperlipidemia, and prediabetes. R. 25–26.

The ALJ further found that Plaintiff's "medically determinable mental impairments of depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." R. 26. Based on his analysis of the four paragraph B criteria addressing the four broad areas of functioning, the ALJ found that Plaintiff's medically determinable mental impairments "cause no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities," concluding that they were therefore non-severe. R. 27–29 (emphasis in the original).

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 29.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various exertional and non-exertional limitations. R. 29–35. The ALJ also found that the Plaintiff was able to perform her past relevant work as a medical – laboratory technician, and that this "work does not require the performance of work-related activities precluded by the claimant's

residual functional capacity[.]" R. 35–36. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 25, 2022, her alleged onset date, through the date of the decision. R. 36.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded with direction for the granting of benefits or reversed and remanded for further proceedings. *Plaintiff's Brief*, ECF No. 9 ("*Pl. Br.*"); *Plaintiff's Reply Brief*, ECF No. 12 ("*Pl. Reply*"). Specifically, Plaintiff challenges, among other things, the ALJ's determination that Plaintiff could return to her prior work as a medical lab technician, a light exertional position, arguing that, in crafting the RFC and evaluating the impact of her physical impairments on her ability to perform light work, the ALJ failed to consider physical therapy records from early 2024. *Id*. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 11 ("*D. Br.*").

## IV. SUMMARY OF ALJ'S FINDINGS AND RELEVANT MEDICAL EVIDENCE

At step three, in considering whether Plaintiff met or medically equaled Listings 1.15 or 1.16, the ALJ first noted that there was no evidence indicating that Plaintiff required an ambulatory aide that requires use of both extremities, or that she could not perform fine and gross movements with at least one upper extremity due to a combination of extremity-related limitations, or that she required the use of a medically necessary mobility device. R. 29. He then reviewed the requirements for Listing 4.04 for ischemic heart disease and found "no

medical findings, which meet the criteria of this listing." *Id.* [3]

At step four, the ALJ concluded that Plaintiff could perform "light" work, "except she can never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and occasionally balance, stoop, kneel crouch, and crawl. The claimant can frequently work at unprotected heights, moving mechanical parts, and operating a motor vehicle. She can frequently work in weather; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extremes of cold and heat; exposure to vibration; and in loud noise." R. 29–30.

In reaching this determination, the ALJ noted, *inter alia*, evidence related to Plaintiff's lumbar degenerative disc disease and lumbar spondylosis. R. 33–34. The ALJ noted that Plaintiff initiated treatment for a new onset of low back pain with sciatica of the lower extremities in October 2022 and that a lumbar x-ray at that time showed moderate L4-5 spondylosis. R. 33. The ALJ noted that a lumbar MRI in November 2022 showed disc bulging and protrusion resulting in moderate spinal and foraminal stenosis. *Id.* The ALJ further noted that Plaintiff initially tried more conservative treatment (medications and epidural steroid injections) without lasting relief. *Id*. She therefore underwent a lumbar fusion at L4-5 on April 7, 2023, which improved her symptoms. *Id*.

The ALJ also noted that at postoperative follow-up on May 8, 2023, Plaintiff was

---

[3] Plaintiff also raises arguments regarding, *inter alia*, her mental impairments. *See generally Pl. Br.*; *Pl. Reply*. However, having found that the ALJ's flawed consideration of the record related to Plaintiff's physical impairments requires remand, the Court does not reach Plaintiff's other arguments. *See Stephen S. v. Comm'r of Soc. Sec.*, No. 24-CV-10055, 2025 WL 2962465, at *6 (D.N.J. Oct. 20, 2025) ("Because the Court concludes that this matter must be remanded for further proceedings based on the ALJ's denial of Plaintiff's right to cross-examine Dr. Lazarus, the Court need not reach Plaintiff's remaining arguments on appeal."); *Charran v. Saul*, 509 F. Supp. 3d 80, 87 n.3 (D.N.J. 2020) ("Because the Court remands the action on this basis, the Court declines to address Plaintiff's other arguments raised in the merits briefs, ECF Nos. 16, 17, 18.").

ambulating throughout the day and able to do some housework, noting that radicular symptoms were slowly improving and she was using medical marijuana for pain control. *Id*. In a follow-up in June 2023, she reported that she had been doing well, just noting some incisional pain. *Id*. The ALJ observed that x-rays showed instrumentation to be in good position and the surgeon noted that she was doing fine, but spondylosis was still described as degenerative changes in multiple endplates and facet joints. *Id*. The surgeon recommended the bone growth stimulator for nine more months and although she was wearing a brace, it was okay to wean usage off that. *Id*.

The ALJ further noted that, by September 2023, Plaintiff had reportedly completed physical therapy and reported minimal pain. *Id*. While she continued with some pain, she stated in a follow-up appointment in December 2023, that it was better now than prior to the surgery and she admitted that she had actually never had any physical therapy.[4] *Id.* The surgeon thought she was doing fairly well and recommended physical therapy. (Ex. B14F/3). A computerized tomography (CT) scan of the lumbar spine at that time still showed spondylosis, including mild to moderate stenosis, but her fusion looked "fine" and the instrumentation was in good position. *Id*.

At a follow-up examination with her surgeon in March 2024, Plaintiff continued to complain of pain, which was radicular in nature and increased with activity and sitting for long periods of time. *Id*. The surgeon observed that she had developed sacroiliac (SI) joint

---

[4] As noted above, in September 2023, Plaintiff reported that she had "completed her physical therapy," R. 910, but admitted in December 2023, that "she never had physical therapy because she had a death in her family[,]" R. 1329. The Court understands this record to mean that Plaintiff did not complete all the recommended physical therapy following the lumbar fusion on April 7, 2023. Records indicate that she did receive some physical therapy immediately following that procedure on April 8, 2023, R. 614–17, 794–97, and April 9, 2023, R. 625–27, 805–08.

dysfunction and again referred Plaintiff to physical therapy. *Id*.

The ALJ next highlighted that clinical exams prior to surgery showed lumbar spasms and tenderness with decreased lumbar range of motion and positive straight leg raise, but there was no focal deficit or edema and her hips, knees, ankles, and upper and lower legs were all normal. *Id*. The ALJ further noted that Plaintiff's cervical spine exhibited normal range of motion without pain or tenderness and that gait, sensation, motor function, coordination, and reflexes were all intact. *Id*. He went on to observe that the examination at the initial surgical evaluation in March 2023 showed 4/5 strength of the bilateral extensor hallucis longus ("EHL") muscles in the lower legs, but otherwise 5/5 strength, normal sensation and gait, and reduced Achilles reflexes. *Id*. A post-operative exam in May 2023 showed steady gait, 5/5 strength, intact sensation, and 1+ reflexes and a post-operative exam in June 2023 showed full range of lumbar motion, ability to walk on heels and toes, no weakness in the lower extremities, and symmetric deep tendon reflexes. *Id*.

The ALJ further highlighted that in September 2023, Plaintiff still had fairly good range of lumbar motion, ability to tandem walk, no sciatic notch pain, and reflexes were 2+. *Id*. In December 2023, a clinical exam showed limited range of lumbar motion, but continued lack of weakness of the lower extremities, no sensory loss, no pain with straight leg raising, and ability to walk on heels and toes and normal range of motion in the cervical spine. *Id.* The ALJ noted that on clinical exam in March 2024, Plaintiff had pain with special tests such as Patrick's and Gaenslen's signs and pain in the SI joints and decreased sensation distally on her toes. *Id*. However, she maintained normal gait and stance otherwise. R. 33–34.

The ALJ therefore concluded that, "[o]verall, the claimant's pain and findings such as limited range of motion tend to support exertional, postural, and environmental limitations.

Although[] allege[d,] reaching limitations are not supported given the claimant's normal cervical range of motion and lack of evidence of significant neck pain symptoms as initially alleged." R. 34.

## V. DISCUSSION

Plaintiff argues, among other things, that the ALJ erred in crafting a RFC for light exertional work because she is limited to, at most, sedentary work stemming from her severe physical impairments, particularly sacroiliitis and radiculopathy. *Pl. Br.* at 17–20; *Pl. Reply* at 3. Plaintiff specifically argues that the ALJ failed to consider notes from a visit on April 8, 2024, with her treating physical therapist, Chad Kreider. *Id*. Plaintiff contends that this failure was harmful legal error, requiring remand. *Id*. For the reasons that follow, this Court agrees.

"Findings of fact by the [Commissioner] must be accepted as conclusive by a reviewing court if supported by substantial evidence." *Cotter v. Harris*, 642, F.2d 700, 704, *3d Cir. 1981). Substantial evidence has been defined as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Id*. (citing *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980); 42 U.S.C. § 405(g)). The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case

law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

At the administrative hearing stage, the administrative law judge is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). A claimant's RFC is the most the claimant can do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

It is well-settled that the ALJ's decision has to "be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter,* 642 F.2d at 704; *see also Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) (holding that the ALJ is required to "consider and evaluate the [relevant] medical evidence in the record consistent with his [or her] responsibilities under the regulations and case law"). The ALJ has a duty to consider all the evidence when determining a claimant's RFC, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), but need only include "credibly established" limitations in the RFC. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record"). However, "[t]his discretion is not unfettered." *Id*. While the ALJ has the discretion to include a limitation that is not supported by any medical evidence "if the ALJ finds the impairment otherwise credible," "the ALJ cannot reject evidence of a limitation for an unsupported reason." *Id.*

"In step four, the ALJ must determine whether a claimant's residual functional capacity enables [him] to perform his [or her] past relevant work." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 120, 120 (3d Cir. 2000). In conducting this analysis, the ALJ must: (1) "make specific findings of fact as to the claimant's residual functional capacity"; (2) "make findings of the physical and mental demands of the claimant's past relevant work"; and (3) compare the claimant's residual functional capacity to his or her past relevant work to determine whether claimant is capable of performing the past relevant work. *See id.* (citing 20 C.F.R. § 404.1561; S.S.R. 82-62; *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)). "Similar to the medical reports, the ALJ must also consider and weigh all of the non-medical evidence before him [or her]." *Burnett*, 220 F.3d at 122 (citing *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Cotter*, 642 F.2d at 707).

"The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982). Determination of the claimant's ability to perform past relevant work requires a careful appraisal of:

> (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

*Id.*

In the present case, as previously noted, Plaintiff contends that the ALJ's failure to consider physical therapy evidence constitutes reversible error. *Pl. Br.* at 17–20; *Pl. Reply* at 3.

Specifically, on April 8, 2024, Plaintiff presented to Mr. Kreider, a licensed physical therapist, for an outpatient physical therapy evaluation. R. 1836–41. Upon examination, Mr. Kreider noted that Plaintiff suffered from "major loss" of lumbar range of motion. R. 1837 (noting "major loss" in specifically lumbar flexion, lumbar extension, lumbar lateral flexion right, and lumbar lateral flexion left), 1840 (same). He further noted reduced strength in Plaintiff's bilateral lower extremities, including 3+/5 in Plaintiff's bilateral hip extension and hip abduction. *Id*. Mr. Kreider additionally noted that Plaintiff's straight leg raise test was positive on the right and her slump test[5] was also positive. *Id*. In evaluating Plaintiff's mobility and gait, Mr. Kreider noted that Plaintiff had a "[s]low determined **gait** pattern with deceased ar[]m swing and trunk rotation" and that Plaintiff stated that "some days she does not feel steady on her feet. She was educated on using a **cane** on those days." *Id*. (emphasis in the original). Mr. Kreider further noted that, under the heading "Functional Reporting/Outcome Tools," Plaintiff scored very low on the Lower Extremity Functional Scale ("LEFS"). *Id*. (reflecting that Plaintiff scored 12 out of a possible 80).[6] Under the heading "Assessment," Mr. Kreider noted as follows:

> Impairments: abnormal **gait**, abnormal or restricted ROM [range of motion], activity intolerance, impaired physical strength, lacks appropriate home exercise program, pain with function, decreased ability to perform **ADLs** [activities of daily living], difficulty performing job and impaired functional mobility[.]
> **Assessment** details: + difficulty with **adls** and household chores. + difficulty with walking long periods of time. + difficulty with stairs. + difficulty with sleeping +

---

[5] The slump test is "used to determine if there is sciatic nerve impingement[.]" *Vitanza o.b.o. Vitanza v. Berryhill*, No. 4:18-CV-0107, 2019 WL 2352141, at *8 (M.D. Pa. May 14, 2019), *report and recommendation adopted sub nom. Vitanza o/b/o Vitanza v. Berryhill*, No. 4:18-CV-00107, 2019 WL 2324570 (M.D. Pa. May 31, 2019).

[6] "The LEFS is a questionnaire where plaintiff rated the level of difficulty that [s]he has with twenty different activities due to [her lower extremity impairment]." *Quintana v. Colvin*, No. 15 CIV. 6473, 2017 WL 752187, at *6 n.21 (S.D.N.Y. Feb. 27, 2017). A zero out of a possible 80 reflects the greatest impairment, *Conti v. The Lincoln Nat'l Life Ins. Co.*, No. CV 22-1579, 2024 WL 1216386, at *2 (D. Minn. Mar. 21, 2024), while "a higher score indicat[es] higher functioning." *Giles v. Colvin*, No. 1:14-CV-00684 (MAT), 2017 WL 2533191, at *3 n.3 (W.D.N.Y. June 12, 2017).

> difficulty with standing for long periods of time. + difficulty with bending and squatting + difficulty lifting and carrying. + difficulty with sitting for long periods of time.

*Id*. (emphasis in the original). Mr. Kreider noted that Plaintiff's prognosis was good. *Id*.

Plaintiff argues that the ALJ never discussed this evidence. *Pl. Br.* at 19. According to Plaintiff, this April 2024 physical therapy evidence conflicts with the ALJ's finding that Plaintiff was capable of performing her past relevant work, which requires an ability to stand, walk, and carry for approximately six hours a day. *Id*. Plaintiff contends that the vocational expert testimony supports a finding that the ALJ's failure to consider this evidence requires remand. *Id*. at 19–20 (citations omitted).

The Court agrees that the ALJ's failure in this regard constitutes reversible error. As detailed above, the ALJ crafted a RFC for light exertional work. R. 29–30. Under the regulations, light work involves

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. . . . *[A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls*. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b). 416.967(b) (emphasis added). More specifically,

> [t]he regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. *A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position*. 'Frequent' means occurring from one-third to two-thirds of the time. *Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday,* ***the full range of light work***

> ***requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday***. Sitting may occur intermittently during the remaining time."

SSR 83-10 (emphasis added); *see also Jesurum v. Sec'y of U.S. Dep't of Health & Hum. Servs*., 48 F.3d 114, 119 (3d Cir. 1995) ("The Secretary has further explained this definition [of light work in the DOT] in Social Security Ruling 83-10 by stating that light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day.").[7]

Nowhere in his recitation of the evidence relied on when crafting the RFC did the ALJ discuss—or even acknowledge—Mr. Kreider's notes from April 2024, documenting, among other things, significant limitations in Plaintiff's lumbar back, abnormal gait, impaired strength, "difficulty with walking long periods of time[,]" "difficulty with standing for long periods of time[,]" "difficulty lifting and carrying[,]" and "difficulty with sitting for long periods of time." R. 30–35, 1837, 1840. In other words, the ALJ did not address evidence that undermines or could undermine his determination that Plaintiff was capable of performing light exertional work. *Id*. Moreover, the ALJ offered no explanation for this omission. R. 30–35. Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

The ALJ's omission in this regard and failure to explain this omission take on even greater significance when one considers the testimony of the vocational expert, upon whom the

---

[7] In contrast, sedentary work requires, *inter alia*, only approximately two hours out of an eight-hour workday. 20 C.F.R. §§ 404.1567(a) (explaining that sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met"), 416.967(a) (same).

ALJ relied. R. 35−36, 72–73. The vocational expert testified that Plaintiff's past relevant work as a medical - laboratory technician was, *inter alia*, light exertion as generally performed (and medium[8] exertion as Plaintiff performed it). R. 72. Notably, the vocational expert expressly stated that Plaintiff would not be able to perform her past relevant work if the exertion level was reduced from light to sedentary. R. 73.

In sum, without further explanation, the Court simply cannot determine from this record if substantial evidence supports the ALJ's RFC determination for light exertional work and, relatedly, whether Plaintiff was capable of performing her past relevant work as a medical – laboratory technician as performed generally (light exertional). *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that the ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review") (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.

---

[8] "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." SSR 83-10 (noting further that the regulations "define medium work as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"); *see also* 20 C.F.R. §§ 404.1567(c) (providing that medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"), 416.967(c) (same).

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: October 15, 2026

*s/Cheryl L. Pollak*
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE